STATE OF NORTH DAKOTA, Respondent, v. WILLIAM HINESH, Appellant.

(228 N. W. 453.)

30

Opinion filed January 6, 1930.

*Charles G. Bangert,* for appellant.
*Charles S. Ego,* State's Attorney, for respondent.

Nuessle, J. The defendant, charged with stealing some barley, was convicted of petit larceny.

Hopperstad, the complaining witness, was a farmer living alone some three miles from the city of Enderlin. The defendant was employed as a steamfitter in Enderlin. On the evening of April 13, 1927, Hopperstad went to a dance. He did not return home until early the next morning. He had cleaned some barley for seed and had piled it in a bin in his granary. The morning after the dance he noticed automobile tracks leading to and from the granary. They were peculiar in that the tires were non-skid on one side and plain on the other. The granary door had been broken open and according to Hopperstad's estimate ten or twelve bushels of barley had been taken. He at once went to town and talked to the officers and to the garageman. He and the sheriff

went out to his place and examined the automobile tracks there. They also examined the granary. The sheriff estimated that eight or ten bushels of the barley had been taken. They then went back to town and looking about discovered an automobile having tires corresponding to those that made the tracks. They found barley on the running board and in the car. This automobile belonged to the defendant. The sheriff inquired of the defendant if he had had the car out the night before. Defendant denied that the car had been out. The sheriff asked defendant if he would drive his car out to the Hopperstad place and compare the tracks, and he agreed to do so. He drove his own car out there. The officers compared the tracks made by the car with the tracks leading to the Hopperstad granary and they were identical. The officers and the defendant then went back to the defendant's boarding place. The officers searched the premises and upstairs in the barn they found a small quantity, seven or eight bushels, of clean barley, of which the sheriff took a sample. This sample was similar to a sample taken from the barley remaining in the Hopperstad granary. The defendant had been at the Hopperstad place four or five times in the fall of 1926 to buy small lots of barley. Though he at first denied that his car had been used the night of the alleged theft, later he said that it had been used that evening to get some barley from a farmer for his landlord who wanted it for chicken feed. He produced witnesses, the landlord's daughter and the farmer, who testified in detail that this was the case. Defendant testified that the barley which he procured for his landlord was that found by the sheriff upstairs in the barn. The State also produced testimony to the effect that on the night the barley was taken, defendant, who knew Hopperstad, enquired of someone in Enderlin if Hopperstad had been seen in town, if he were dressed up, and if he were going to the dance. Shortly before the case came to trial defendant sought out Hooperstad and enquired if he could not settle the case by paying him. Defendant was convicted. Thereupon he perfected this appeal from the judgment of conviction.

Defendant's first contention is that the evidence is purely circumstantial and is not sufficient to sustain the verdict returned by the jury. He made no motion for a new trial but did move for an advised verdict of not guilty at the appropriate time.

We have examined the record carefully. The defendant denies the charge against him, and the evidence adduced in his behalf tends to sustain his denial. On the other hand, the State's evidence warrants the statement of facts heretofore made. The evidence against the defendant is purely circumstantial. The jury after having heard and seen the witnesses must have seen fit to accept the State's version with respect to the matter and to reject the defendant's. We think that the evidence is sufficient to sustain the verdict.

The defendant has also assigned error on account of rulings of the court touching the admission of evidence and specifies nearly every adverse ruling in the record. His first specification is that the court erred in refusing to strike out the non-responsive portion of an answer. When the motion was made the counsel for the State conceded, and so stated in the record, that the answer might be stricken, but no ruling was made by the court. The motion was not repeated, nor did the defendant further insist upon it. It is doubtful if the matter moved to be stricken was seriously prejudicial, but, in any event, considering the record, we do not believe that there was error on which the defendant can ground a reversal. Again the defendant complains because the court denied his motion to strike an answer. The motion was simply, "We move to strike that out." No ground was assigned. The motion did not follow an objection. That being the case the defendant cannot predicate error on the action of the court. Again the defendant complains because an objection was sustained on the ground that it called for the conclusion of the witness. The question was: "What kind of tread did the Goodyear tire have with reference to the kind of treads testified to as being found on the highway?" We think that the court's ruling was correct. In any event, the witness was permitted to and did fully describe the tire referred to. And again the defendant complains because his objection to a question calling for a statement not made in the presence of the defendant was overruled. If there was error in the ruling it was without prejudice for the reason that the witness answered that no statement was made. Again the defendant complains because of certain questions which were permitted over his objection that the same were leading. To some extent the questions were leading, but under the circumstances it was discretionary with

the court to permit the same and no error can be predicated on his doing so. Finally, the defendant urges that the court erred in receiving in evidence certain samples of barley over his objection that no proper foundation was laid therefor, in that it had not been established that the exhibits had been safely and securely kept by the witnesses in whose custody they were. One of these samples was produced by the witness Hopperstad. Hopperstad testified he had taken it from the bin from which he claimed that the barley had been stolen the morning after the alleged theft. The sample was kept by him, first in a sack and later in a can in his house. The house was not locked and it would have been possible for anyone desiring to do so to enter and substitute other barley for the sample, or otherwise tamper with it, but there was no testimony indicating that this had been done. Similarly, a sample of the barley found by the sheriff in the landlord's barn was taken by him and kept in his office in a sack. It was not put under lock and key and though he testified it had not been disturbed by anyone, yet it would have been possible for those who went to and from his office to tamper with it. However, there was no evidence indicating in any way that this had been done. We think that the custody of these two samples of grain was sufficiently shown in the persons who produced them at the trial and there was sufficient proof as to the identity of the samples so as to warrant the court in receiving them when offered in evidence.

Lastly, the defendant challenges the instruction given by the court to the jury with regard to the matter of circumstantial evidence. The case against the defendant is purely circumstantial. No requests, however, for instructions respecting circumstantial evidence were made by the defendant. The court, among other things, charged that the burden was upon the state to establish every material allegation in the information to the satisfaction of the jury beyond a reasonable doubt before the defendant could be found guilty; that the defendant was presumed to be innocent; that while the state was required to establish his guilt beyond a reasonable doubt, such proof could be by circumstantial evidence. The court then defined circumstantial evidence and direct testimony and charged further "Before you can find a verdict of guilty

based upon circumstantial evidence alone, each fact necessary to the conclusion sought to be established must be proven beyond a reasonable doubt. All the facts must be consistent with each other and with the main facts to be proved, and the circumstances taken together must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the defendant and no other person committed the offense charged against him." This instruction apparently was taken from the case of Casey v. State, 20 Neb. 138, 29 N. W. 264, for it is the first paragraph of the syllabus in that case verbatim. The defendant's criticism of this instruction is that the court did not in so many words charge "that it was essential that the circumstances when taken as a whole and given their reasonable and just weight, and no more, should to a moral certainty exclude every other hypothesis except that of the guilt of the accused." We think, however, that the charge as given amounts in substance to that which the defendant insists should have been given. In any event, it did not mislead the jury, and there having been no request for an instruction the defendant cannot predicate error on that thus given. See State v. Glass, 29 N. D. 620, 151 N. W. 229; State v. Bowe, 57 N. D. 89, 220 N. W. 843; State v. Hazer, 57 N. D. 900, 225 N. W. 319.

The judgment is affirmed.

BURKE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.